UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RAFAEL RIVERA,  25-cv-1046

Plaintiff

v.

CITY OF HARTFORD and JOHN/JANE DOES 1-6,

Defendants

## COMPLAINT

1. For over an hour, Rafael Rivera begged Hartford police officers to loosen the handcuffs crushing his wrists. His right hand went numb. Pain shot through his arm. His wrist swelled against the metal restraints. "Take me to the hospital," he pleaded from the back of the patrol car. The officers refused. When they finally removed the handcuffs at the police station, Mr. Rivera's wrist made an audible cracking sound as fractured bones shifted position. X-rays later confirmed what Mr. Rivera already feared from the searing pain—the officers' deliberate indifference to his repeated warnings had broken his wrist. He therefore brings this civil rights action to remedy the violation of clearly established law and of his constitutional rights by approximately a half-dozen Hartford, Connecticut police officers acting under color of law and arising from the City's failure to train, supervise, or maintain adequate policies and procedures.

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(3), because this action seeks to redress the deprivation of constitutional rights under color of state law.

3. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), because the defendants reside in this district and a substantial part of the events giving rise to the plaintiff's claims occurred in this district.

4. Plaintiff Rafael Rivera is a resident of Connecticut who was incarcerated at Cheshire Correctional Institution at the time of filing.

5. Defendant City of Hartford is a municipal corporation organized under the laws of Connecticut.

6. Defendants John/Jane Does 1-6 are police officers employed by the Hartford Police Department whose identities are currently unknown to Plaintiff despite his diligent efforts to obtain this information through Freedom of Information Act requests.

7. On April 12, 2023, at approximately 10:36 a.m., Hartford police officers arrested Mr. Rivera and placed him in handcuffs.

8. At the time of his arrest, Mr. Rivera had no injuries to his wrists or hands.

9. The arresting officer applied the handcuffs with excessive force, ratcheting them tightly against Mr. Rivera's wrists.

10. Within minutes of being placed in the patrol vehicle, Mr. Rivera informed the officer that the handcuffs were too tight.

11. As time passed, Mr. Rivera's complaints became increasingly urgent. He told the officer he could no longer feel his right hand.

12. Mr. Rivera explicitly requested that the officer either loosen the handcuffs or take him to the hospital for medical attention.

13. The officer callously responded that it was "not his job to call an ambulance" and that Mr. Rivera "was fine."

14. For approximately ninety minutes, Mr. Rivera remained in the patrol car with excessively tight handcuffs causing his right wrist to swell visibly.

15. The officers arrived at the Hartford Police Department at approximately 11:57 a.m., having kept Mr. Rivera in painfully tight restraints for over an hour and twenty minutes.

16. At the police station, Mr. Rivera again warned officers to "be careful" when removing the handcuffs because of the severe pain.

17. In a clear display of deliberate indifference, one officer became "upset" and forcefully removed the handcuffs while pushing Mr. Rivera against a wall.

18. As the handcuffs came off, Mr. Rivera's wrist made an audible cracking sound that was heard by multiple officers present.

19. A female officer acknowledged the severity of what had occurred, stating "you see what you did."

20. Despite this clear evidence of injury, the officers still refused to provide Mr. Rivera with medical attention.

21. Instead, they proceeded to process his arrest, taking fingerprints and photographs while Mr. Rivera suffered from untreated fractures.

22. Mr. Rivera was placed in a holding cell where he continued to experience severe pain.

23. At approximately 5:00 p.m.—nearly seven hours after his initial arrest—Officer John Hernandez observed Mr. Rivera in obvious distress and inquired about his condition.

24. Only after Officer Hernandez's intervention and direct order did the other officers finally transport Mr. Rivera to Saint Francis Hospital.

25. Medical examination and X-rays revealed that Mr. Rivera had sustained fractures to his right ulnar styloid and fifth metacarpal base—injuries directly caused by the excessively tight handcuffs.

26. Hospital records confirm Mr. Rivera was brought to the emergency department in police custody at 4:45 p.m. with "Arm Pain" following an "altercation with police."

27. The medical provider documented that Mr. Rivera reported being "in an altercation with police" and had "limited range of motion of the right wrist."

28. At the time of these events, it was clearly established that:

1. Officers must respond to a detainee's complaints that handcuffs are too tight;
2. Officers must loosen or adjust handcuffs when a detainee complains of pain or numbness;
3. Officers cannot ignore visible signs of injury such as swelling; and
4. Officers must provide medical attention for serious injuries.

29. Every reasonable officer would have known that maintaining excessively tight handcuffs for ninety minutes after repeated complaints of pain and numbness violates the Fourth Amendment.

30. Every reasonable officer would have known that refusing to provide medical attention for fractures caused by their own excessive force violates the Constitution.

**CLAIMS FOR RELIEF**

**COUNT I**: Excessive Force in Violation of the Fourth Amendment
(Against Doe Defendants)

31. Mr. Rivera re-alleges paragraphs 1-30 as if fully set forth herein.

4

32. The Doe Defendants used excessive and unreasonable force by:

    1. Applying handcuffs with excessive tightness;
    2. Refusing to loosen handcuffs despite repeated complaints;
    3. Maintaining excessively tight restraints for approximately ninety minutes;
    4. Forcefully removing handcuffs in a manner that exacerbated injuries.

33. This force was objectively unreasonable under the circumstances and caused Mr. Rivera to suffer fractures requiring medical treatment.

**COUNT II**: Deliberate Indifference to Serious Medical Needs in Violation of the Fourteenth Amendment

(Against Doe Defendants)

34. Mr. Rivera realleges paragraphs 1-33 as if fully set forth herein.
35. The fractures to Mr. Rivera's wrist constituted a serious medical need.
36. The Doe Defendants were deliberately indifferent to this serious medical need by:

    1. Refusing to provide medical attention despite Mr. Rivera's explicit requests;
    2. Ignoring visible swelling and Mr. Rivera's reports of numbness;
    3. Failing to seek medical care after hearing Mr. Rivera's wrist crack;
    4. Delaying medical treatment for approximately seven hours.

**COUNT III**: Retaliation in Violation of the First Amendment

(Against City of Hartford)

37. Plaintiff incorporates all preceding paragraphs.

38. The City of Hartford is liable for the violations of Mr. Rivera's constitutional rights pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), through its policies, practices, customs, and deliberate indifference.

**Failure to Train**

39. The City of Hartford failed to adequately train its police officers regarding:

    a. Proper application of handcuffs to avoid nerve damage and circulation loss;

    b. Recognizing and responding to medical distress signs including numbness, swelling, and severe pain;

    c. The constitutional obligation to adjust or loosen restraints upon complaint;

    d. The duty to provide prompt medical attention for injuries caused during arrest.

40. This failure to train reflects deliberate indifference because:

    a. The need for such training is obvious—officers routinely apply handcuffs during arrests;

    b. Excessively tight handcuffing poses a known risk of serious injury including nerve damage and fractures;

    c. Without proper training, constitutional violations are highly predictable when officers restrain citizens.

41. The City's inadequate training is demonstrated by the conduct of six or more officers who:

    a. Ignored ninety minutes of complaints about tight handcuffs;

    b. Refused explicit requests for medical attention;

    c. Failed to recognize obvious signs of injury including visible swelling;

d. Used additional force when removing handcuffs despite warnings about pain;

e. Continued processing despite hearing bones crack;

f. Delayed medical treatment for approximately seven hours.

**Custom of Deliberate Indifference to Medical Needs**

42.     The City of Hartford maintains a custom, policy, or practice of deliberate indifference to the serious medical needs of arrestees, as evidenced by:

a. The arresting officer's statement that it was "not his job to call an ambulance";

b. Multiple officers' failure to provide medical care despite obvious injury;

c. The systematic progression through booking procedures while ignoring untreated fractures;

d. The fact that only one officer (Hernandez) out of six or more recognized the need for medical attention after seven hours.

43.     This widespread behavior among multiple officers demonstrates that ignoring detainee medical needs is so common, persistent, and well-settled as to constitute a custom with the force of law.

**Failure to Supervise and Discipline**

44.     The City of Hartford has failed to adequately supervise and discipline officers who use excessive force and deny medical care, thereby ratifying such conduct and encouraging future violations.

45.     This failure is evidenced by:

a. No officer intervened when handcuffs caused visible swelling;

b. No officer reported misconduct despite a female officer acknowledging "you see what you did";

c. Multiple officers participated in or witnessed the violation without taking corrective action;

d. The apparent absence of any internal investigation despite Mr. Rivera suffering fractures requiring hospital treatment.

**Policy of Evidence Destruction**

46. The City of Hartford maintains a policy of destroying video evidence after only 28 days, despite knowing that:

a. Civil rights claims have a three-year statute of limitations;

b. Connecticut FOIA requests routinely take months to process;

c. Incarcerated individuals face additional barriers to obtaining records;

d. Video evidence is crucial to proving or defending excessive force claims.

47. This 28-day retention policy demonstrates deliberate indifference to constitutional violations by systematically destroying evidence before victims can access it, thereby shielding officers from accountability.

48. Ms. Sofia Muñoz, in a communication that appears to present City of Hartford policy, confirmed to Mr. Rivera's representative that videos from his arrest were destroyed pursuant to this policy, stating "the videos are erased in 28 days."

**Causation**

49. The City's policies, customs, and practices were the moving force behind Mr. Rivera's injuries:

a. Properly trained officers would have loosened handcuffs upon complaint;

b. Adequate supervision would have led to intervention before fractures occurred;

c. A constitutional evidence retention policy would have preserved proof of misconduct;

d. Proper medical care protocols would have resulted in immediate treatment.

50. The City's deliberate indifference is further demonstrated by the sheer number of officers who participated in or witnessed the violation—indicating systemic failure rather than isolated misconduct.

51. Upon information and belief, the City of Hartford:

a. Has received prior complaints about excessively tight handcuffing;

b. Fails to track or analyze patterns of force-related injuries;

c. Has no meaningful early warning system for officer misconduct;

d. Provides no scenario-based training on responding to handcuff complaints;

e. Has no written policy requiring documentation when arrestees complain about restraints.

52. The constitutional violations suffered by Mr. Rivera were the direct and proximate result of the City's deliberate indifference to an obvious need for training, supervision, and accountability regarding the use of restraints and provision of medical care.

53. As a direct result of the City's unconstitutional policies, practices, and customs, Mr. Rivera suffered severe physical injuries, pain and suffering, emotional distress, and medical expenses.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Rafael Rivera respectfully requests that this Court:

A. Award compensatory damages in an amount to be determined at trial;

B. Award punitive damages against the individual defendants in an amount to be determined at trial;

C. Award costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

D. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

By: /s/
Alexander T. Taubes, Esq.
Federal Bar No.: ct30100
Alexander T. Taubes
470 James Street, Suite 007
New Haven, CT 06513
(203) 909-0048
alextt@gmail.com