**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RAFAEL RIVERA, | ) | 3:25-CV-01046 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF HARTFORD et al, | ) | |
| *Defendants.* | ) | July 2, 2026 |

<u>**ORDER ON MOTION TO DISMISS**</u>

Sarala V. Nagala, United States District Judge.

In this civil rights action, plaintiff Rafael Rivera alleges that Defendant Officers Romero, Bell, Diaz, George, Spearman, and Shelton (the "Individual Defendants") and the City of Hartford (the "City"), violated his constitutional rights during and after effectuating his arrest in 2023. Plaintiff asserts three counts:  excessive force in violation of the Fourth Amendment, as against the Individual Defendants; deliberate indifference to medical needs in violation of the Fourteenth Amendment, as against the Individual Defendants; and municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), as against the City.  The City seeks to dismiss Count Three, contending that Plaintiff fails to state a claim under *Monell*.  For the reasons described below, the Court GRANTS the City's motion to dismiss in full.[1]

## I.    FACTUAL BACKGROUND

### A.  <u>Factual Allegations</u>

The Court accepts the following allegations in Plaintiff's amended complaint as true for purposes of deciding Defendant's motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] The Court held oral argument on the motion on June 23, 2026.  Plaintiff's counsel had previously confirmed availability, but did not attend.  He later notified the Court that he missed the hearing due to a calendaring error.

On April 12, 2023, at approximately 10:36 a.m., Hartford police officers arrested Plaintiff. Am. Compl., ECF No. 20 ¶ 7. Defendant Officer Zachary Romero applied handcuffs to Plaintiff's wrists, and Plaintiff was placed in the back of Defendant Officer Joseph Bell's patrol vehicle. *Id.* ¶¶ 9–10. Within minutes of being placed in the patrol car, Plaintiff informed the officers in the vehicle—Defendant Bell and Defendant Officer Alexander Diaz—that his handcuffs were too tight. *Id.* ¶ 10. Plaintiff experienced worsening discomfort and lost feeling in his right hand, which he reported to the officers. *Id.* ¶ 11. He requested that the handcuffs be loosened or that he be taken to the hospital for medical attention. *Id.* ¶ 12. Defendant Bell refused, stating it was "not his job to call an ambulance" and that Plaintiff "was fine." *Id.* ¶ 13. Plaintiff remained in the patrol car until it arrived at the Hartford Police Department at approximately 11:57 a.m., while his right wrist swelled visibly in the handcuffs. *Id.* ¶¶ 14–15.

At the police station, Plaintiff told Defendants Bell and Diaz to "be careful" when removing his handcuffs because he was in pain. *Id.* ¶ 16. Defendant Officer Vincent George nevertheless "forcefully" removed Plaintiff's handcuffs while pushing Plaintiff against a wall. *Id.* ¶ 17. Plaintiff alleges that Defendant George was "upset" while he did so, although is not clear what upset Defendant George. *Id.* As Defendant George removed the handcuffs, Plaintiff's wrist made an "audible cracking sound." *Id.* ¶ 18. Multiple other officers were present, including Defendant Officer Karen Spearman and Defendant Natacha Shelton, and heard the cracking noise. *Id.* Defendant Spearman stated, "you see what you did," seemingly in reference to Plaintiff's wrist. *Id.* ¶ 19.

None of the officers provided Plaintiff with medical attention immediately after the incident. *Id.* ¶ 20. Instead, Defendants Spearman and Shelton processed Plaintiff's arrest, and Plaintiff was placed in a holding cell. *Id.* ¶¶ 21–22. For the next several hours, Plaintiff

2

experienced severe pain while in the holding cell, without medical intervention. *Id.* ¶¶ 22–23. Later that afternoon, Officer John Hernandez observed Plaintiff, who was in distress, and inquired about his condition. *Id.* ¶ 23. After Officer Hernandez intervened, officers transported Plaintiff to Saint Francis Hospital, where he arrived in the emergency department at 4:45 p.m. *Id.* ¶¶ 24, 26. Medical examination and X-rays revealed that Plaintiff had "sustained fractures to his right ulnar styloid and fifth metacarpal base." *Id.* ¶ 25. Plaintiff alleges that these injuries were directly caused by the excessively tight handcuffs. *Id.*

B.  The Present Action

Plaintiff filed this action on June 30, 2025, asserting claims of excessive force and deliberate indifference by six John and Jane Doe police officers, and retaliation in violation of the First Amendment by the city of Hartford. Compl., ECF No. 1.[2] The City filed a motion to dismiss the municipal liability claim for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Mot. to Dismiss, ECF No. 11. Just after the 21-day period to amend the complaint as of right had elapsed, Plaintiff filed an amended complaint, identifying the six police department employees by name. *See* Mot. for Extension of Time, ECF No. 17; Am. Compl., ECF No. 20. With Defendants' consent, the Court treated the late-filed amended complaint as a timely-filed amendment as of right. ECF No. 18. As relevant here, the amended complaint does not change the substantive allegations against the City in Count Three: Plaintiff asserts that the City is liable pursuant to *Monell* for violations of Plaintiff's constitutional rights through its failure to train officers, custom of deliberate indifference to medical needs, failure to supervise and discipline officers, and policy

---

[2] Although the original complaint labeled Count Three as a retaliation claim, its substantive allegations suggest that Plaintiff intended to bring a *Monell* claim, rather than a retaliation claim. The amended complaint updates the caption for Count Three to reflect a *Monell* claim. *Compare* ECF No. 1 at 5 *with* ECF No. 20 at 6. Accordingly, the Court presumes the original caption of Claim Three was a typographical error. The City's motion to dismiss treats Count Three as if it were a *Monell* claim. *See* ECF No. 11.

of destroying video footage of arrests after 28 days.  *Compare* ECF No. 1 ¶¶ 37–53 *with* ECF No. 20 ¶¶ 37–53.  The City requested that the Court consider the merits of its previously-filed motion to dismiss as applied to Plaintiff's amended complaint.  Notice, ECF No. 21.[3]  Plaintiff opposes the motion. Opp. to Mot. to Dismiss, ECF No. 25.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Consequently, "[t]hreadbare recitals of the elements of a

---

[3] The six individual defendants have filed an answer to the amended complaint and have not moved to dismiss the claims against them.  Answer, ECF No. 31.

cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III.    DISCUSSION

The Court grants the City's motion to dismiss Plaintiff's municipal liability claim in full.

Under *Monell*, 436 U.S. at 690, a town or municipality can be directly liable for violations of 42 U.S.C. § 1983 committed by its employees in certain circumstances. The Second Circuit has distilled the requirements of a *Monell* claim into three elements, holding that a plaintiff must plead: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007); *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020). A plaintiff may satisfy the policy or custom element in several ways:

> (1) a formal policy which is officially endorsed by the municipality, . . . (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the [plaintiff's] civil rights, . . . (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive notice knowledge of policy-making officials . . . or (4) a failure by official policy makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal         employees        will         come        into         contact.

*Albert v. City of Hartford*, 529 F. Supp. 2d 311, 329 (D. Conn. 2007) (cleaned up) (collecting cases); *see also Gomez v. City of Norwalk*, No. 15-CV-1434 (MPS), 2017 WL 3033322, at *3 (D. Conn. July 17, 2017). In addition, if a constitutional violation is committed by a lower-level municipal employee, an official policy can be demonstrated by showing that "a policymaker ordered or ratified the subordinates' actions," or that "the policymaker was aware of a

subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004).

Regardless of how a plaintiff demonstrates an official policy or custom, he "must demonstrate that through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Agosto*, 982 F.3d at 98 (cleaned up) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997), and *Roe v. City of Waterbury*, 542 F.3d 31, 40 (2d Cir. 2008)). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bryan Cnty.*, 520 U.S. at 404.

Here, Plaintiff asserts several theories of municipal liability, which the Court summarizes as follows. First, Plaintiff contends that the City is liable for its officers' constitutional violations based on its failure to adequately train its officers regarding proper application of handcuffs, recognizing and responding to medical distress, the constitutional obligation to adjust or loosen restrains upon complaint, and the duty to provide prompt medical attention for injuries during arrest. ECF No. 20 ¶ 39. Second, Plaintiff alleges that the City fails to adequately supervise and discipline officers who use excessive force and deny medical care, thereby ratifying such conduct and encouraging future violations. *Id.* ¶ 44. Third, Plaintiff alleges that the City maintains a custom of deliberate indifference to the serious medical needs of arrestees, as demonstrated by the officers' conduct during and after Plaintiff's arrest. *Id.* ¶ 42. Fourth, Plaintiff maintains that the City's formal policy of destroying arrest videos after 28 days amounts to deliberate indifference to constitutional violations through the systematic destruction of evidence before victims can access it. *Id.* ¶¶ 46–47. The Court grants the City's motion to dismiss as to all four theories.

A. <u>Failure to Train</u>

First, Plaintiff's amended complaint does not sufficiently allege municipal liability for the City's failure to train its officers, for several reasons.

A municipality's failure to train its officers is actionable under § 1983 only where such failure rises to the level of "'deliberate indifference' to the rights of its inhabitants." *City of Canton v. Harris,* 489 U.S. 378, 388–89 (1989). This theory of municipal liability is among the "most tenuous." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Plaintiff has not adequately alleged a failure to train theory of municipal liability here.

As an initial matter, a "single incident involving employee below the policymaking level generally will not suffice to support inference of a municipal custom or policy." *Vann v. City of New York*, 72 F.3d 1040, 1050 (2d Cir. 1995) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation."); *see also Gavin v. City of N.Y.*, No. 20-CV-8163 (JPO), 2021 WL 3774113, at *4 (S.D.N.Y. Aug. 24, 2021).

In an older line of cases, the Second Circuit suggested that a single, isolated "brutal incident," such as a severe beating, may "suggest official acquiescence" or be attributable to inadequate training or supervision. *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979); *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir. 1980) (holding that single incident committed by a group of

municipal employees can support an inference of deliberate indifference in absence of proof of policy or custom only if it is "unusually brutal or egregious").  But courts, including the U.S. Supreme Court, have diverged from that approach in more recent years, requiring a "pattern" of events to state a claim under *Monell*, except in a narrow set of circumstances where "the unconstitutional consequences of failing to train [are] . . . patently obvious."  *See Connick*, 563 U.S. at 63; *id.* at 62 ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference."); *Simms v. City of New York*, 480 F. App'x 627, 630–31 (2d Cir. 2012) (affirming dismissal for failure to "establish a pattern of violations" where the plaintiff asserted two instances of constitutional violations as to himself and cited another lawsuit alleging a third, similar incident); *Tyus v. Newton*, No. 3:13-CV-1486 (SRU), 2015 WL 1471643, at *11 (D. Conn. Mar. 31, 2015) (collecting cases allowing *Monell* claims to proceed where plaintiffs asserted more than one similar violation).

Here, Plaintiff bases his failure to train theory solely on his own, singular experience with Hartford police officers on April 12, 2023.  Absent allegations of any type of pattern of similar actions by Hartford officers—either with Plaintiff himself or with others on different occasions—or allegations that would otherwise suggest that any failure to train on the part of the police department was the result of its deliberate indifference, the Court is hard-pressed to find that Plaintiff has adequately stated a claim that the City should be liable based on a failure to train its officers.  Plaintiff's theory amounts to a claim that the City's training *must* be deficient because six officers were involved in interacting with Plaintiff that day, but the fact that multiple officers were involved (in different ways) does not necessarily mean Plaintiff has plausibly alleged deficiency in the police department's training of officers.  Nor do Plaintiff's allegations qualify as

8

"unusually brutal or egregious," such that the single encounter can support an inference of a failure by the City to properly train its officers.[4]

Further, Plaintiff's failure to train theory fails because the amended complaint does not satisfy the three requirements that must be pleaded before failure to train or supervise constitutes deliberate indifference: (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation," (2), "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation," and (3) "that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992). These elements ensure that a municipality will not be held liable for deliberate indifference by failing to train employees "for rare or unforeseen events," or where employee misconduct is unlikely to deprive citizens of constitutional rights. *Walker*, 974 F.2d at 297.

The Court acknowledges that the first and third elements of the test may be fairly inferred based on Plaintiff's allegations, at least as to the need to safely apply handcuffs to avoid injuring arrestees. It is plausible that City decisionmakers are aware that their officers will conduct arrests requiring handcuffs, and that the misapplication of handcuffs could constitute the excessive use of force. *See Marom v. City of New York*, No. 15-CV-2017 (PKC), 2016 WL 916424, at *22 (S.D.N.Y. Mar. 7, 2016), *reconsidered on other grounds*, No. 15-CV-2017 (PKC), 2016 WL 5900217 (S.D.N.Y. July 29, 2016). But the amended complaint fails to plausibly allege the second element of the test, for two reasons.

---

[4] Even *Turpin*, which suggested that a such a beating administered by a group of municipal employees could "warrant an inference" of deliberate indifference, ultimately rejected the plaintiff's municipal liability claim, noting that "[t]here was no evidence of a prior pattern or practice of harassment on the part of the police force, much less that it was brought to the attention of the Board." *See Turpin*, 619 F.2d at 202.

First, the allegations of the second amended complaint relate only to one incident. Plaintiff fails to plausibly allege that there is a "history" of the Hartford Police Department mishandling the application of handcuffs, failing to respond to signs of medical distress, or failing to loosen restrains upon complaint "on a scale that could be reasonably construed as setting out a pattern or practice of constitutional abuse." *Id.* As noted above, a pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference. *Connick*, 563 U.S. at 62 (quoting *Bryan Cty,* 520 U.S. at 409). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*; *see also Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 536–37 (S.D.N.Y. 2012) (dismissing failure-to-train claim in part because the plaintiff "ha[d] not identified *any* details about other instances of police misconduct"). This is not the type of case where the unconstitutional consequences of failing to train were so "patently obvious" as to show deliberate indifference "without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64.

And second, the application of handcuffs or provision of medical care is not a "difficult choice" of the sort that has been held to warrant special training absent a pattern of violations, because it does not require more than the application of common sense. *Walker*, 974 F.2d at 297 (describing whether to use deadly force as one such difficult choice, "because more than the application of common sense is required," and noting that "[a] choice might also be difficult where, although the proper course is clear, the employee has powerful incentives to make the wrong choice"); *Connick*, 563 U.S. at 68 ("showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability").

10

While Plaintiff alleges that the individual Defendants engaged in conduct that they should have been trained on, ECF No. 25 at 1 ("officers stated it was 'not [their] job to call an ambulance' and processed an arrestee despite audible bone fractures"), this merely amounts to an allegation "that the injury could have been avoided with 'better or more training,'" which is insufficient to support a *Monell* claim.  *See Hernandez v. United States*, 939 F.3d 191, 207 (2d Cir. 2019).  It does not rise to the level of a plausible showing of deliberate indifference based on a failure to train.

The Supreme Court and Second Circuit have "unequivocally require[d] . . . that the factfinder's inferences of inadequate training and causation be based on more than the mere fact that the misconduct occurred in the first place."  *Amnesty Am*, 361 F.3d at 130.  As that is all Plaintiff relies on here, his failure to train theory fails.

B.  Failure to Supervise

Plaintiff has likewise failed to plead a municipal liability theory of failure to supervise or discipline officers who use excessive force and deny medical care.  As with failure to train claims, a municipality's failure to supervise is not actionable unless it rises to the level of "deliberate indifference."  *City of Canton,* 489 U.S. at 388; *see also Amnesty Am.*, 361 F.3d at 127–28 (analyzing failure to supervise claim under deliberate indifference standard).  A failure to supervise claim "requires allegations as to the violation itself and policymakers' reaction to it."  *Id.*  at 127 n.8.  In the context of a failure to supervise claim, deliberate indifference may be established by showing that policymaking officials deliberately ignored an "obvious" need for supervision.  *See id.* (citing *Vann*, 72 F.3d at 1049).  Indeed, in *Amnesty America* itself, the chief of police had allegedly witnessed the assault, but failed to supervise the officers in a way that would have prevented the violation of the plaintiffs' constitutional rights.  *Id.* at 127.

11

As discussed above, the principle that proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* applies with equal force to claims of failure to supervise. *See, e.g.*, *Mahan v. City of New York*, No. 00-CV-6645, 2005 WL 1677524, at *6 (E.D.N.Y. July 19, 2005) (citing *Tuttle*, 471 U.S. at 823–24). But even if it did not, Plaintiff's failure to allege any facts about City policymakers' reactions to the handcuffing incident and his resulting injuries would doom any *Monell* claim premised on failure to supervise. The amended complaint alleges constitutional violations by individual Defendant officers, but contains no information about decisionmakers' reaction to the incident.

Additionally, the amended complaint does not state facts from which it could plausibly be inferred that any City policymaking officials deliberately ignored an obvious need for supervision. Under *Vann*, a need may be "obvious" if the municipality has received "repeated complaints of civil rights violations," and deliberate indifference may be shown through expert testimony, or otherwise may be inferred if there is "no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann,* 72 F.3d at 1049. The amended complaint contains no allegations regarding complaints of other handcuffing-related civil rights violations, from Plaintiff or others, against one officer or more. *Cf. id*, 72 F.3d at 1042 (detailing at least nine complaints made by members of the public against a single police officer); *Gilbert v. Newton*, No. 3:13-CV-1715 (JCH), 2015 WL 3755955, at *6–7 (D. Conn. June 15, 2015) (holding a reasonable jury could infer deliberate indifference in light of at least seven complaints relating to suspicionless traffic stops); *see also Mahan*, 2005 WL 1677524, at *6. While Plaintiff pleads that there was an "apparent absence of any internal investigation" in response to his injuries, ECF No. 20 ¶ 44, there is no indication that supervisors ever received reports or other information indicating a constitutional violation occurred. Rather, Plaintiff pleads only that officers simultaneously failed

to intervene when he had clearly been injured—and that officers failed to report alleged misconduct. *Id.* But "contemporaneous . . . conduct cannot establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates." *Connick*, 563 U.S. at 63 n. 7 (internal quotation marks and brackets omitted). While a failure to intervene can be a basis for holding an individual officer liable, it is not a basis for municipal liability on a failure to supervise theory, without more. Accordingly, Plaintiff fails to state a *Monell* claim on a failure to supervise theory.

### C. Custom of Deliberate Indifference

Next, Plaintiff has not alleged the existence of a "widespread practice" of deliberate indifference to arrestees' serious medical needs.[5] To survive a motion to dismiss, a complaint must allege "a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive notice knowledge of policy-making officials." *Albert*, 529 F. Supp. 2d at 329. As discussed above, a "single incident involving employee below the policymaking level generally will not suffice to support inference of a municipal custom or policy." *Vann*, 72 F.3d at 1050.

Assuming for the sake of argument that Plaintiff has adequately pleaded that the individual officers who participated in and/or observed his arrest and detention were deliberately indifferent to his serious medical needs, he has not pleaded that the officers' approach reflects a "widespread practice." The Court acknowledges that "the pre-discovery pleading standard for a *Monell* custom or practice is not a high bar, and just a handful of instances of 'similar' unconstitutional

---

[5] Plaintiff does not explicitly allege that the City maintains a policy or custom of Fourteenth Amendment violations, but the Court interprets Plaintiff's reference to "deliberate indifference to serious medical needs" as raising such an allegation, since Plaintiff was a pre-trial detainee. *See Horace v. Gibbs*, 802 F. App'x 11, 13–14 (2d Cir. 2020) ("A post-conviction-prisoner's deliberate indifference claim is analyzed under the Eighth Amendment while the same claim raised by a pretrial detainee is analyzed under the Due Process Clause of the Fourteenth Amendment."); *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).

misconduct, *in addition to a plaintiff's own experience*, can warrant proceeding to discovery." *Gavin*, 2021 WL 3774113, at *4 (emphasis added) (cleaned up).  But Plaintiff has failed to clear this hurdle.  Allegations involving only one incident—even if several officers were present for that incident—do not constitute a pattern of misconduct "so widespread as to have the force of law." *Cf. Bryan Cty.*, 520 U.S. at 404; *see also Pal v. Cipolla,* No. 3:18-CV-616 (MPS), 2019 WL 2930008, at *5 (D. Conn. July 8, 2019) ("The conduct of one group of officers against one individual on a few occasions is insufficient to establish an unwritten policy or custom."); *Colson v. Mingo*, No. 18-CV-2765 (JGLC), 2025 WL 218520, at *16 (S.D.N.Y. Jan. 16, 2025) ("[T]he Second Circuit has concluded that two or three instances 'over a period of several years' perpetuated by 'a small number of officers' is insufficient to establish *Monell* liability." (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 85 (2d Cir. 2012)); *Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 14 (2d Cir. 2015) (despite Defendant's "troubled track record in many respects," the plaintiff "ha[d] not pleaded a *custom* of not providing adequate medical supervision . . . Indeed, other than the plaintiff, the amended complaint provides only one additional example of a similar incident.").  Additionally, it is worth noting that one officer did, in fact, intervene later in the day, which works against Plaintiff's allegation that there was a widespread practice of deliberate indifference to detainees' medical needs resulting from excessively tight handcuffing.

Thus, Plaintiff fails to adequately plead his municipal liability theory of a widespread practice.

D.  Video Retention Policy

Finally, the Court dismisses Plaintiff's claim of municipal liability relating to the City's 28-day video retention policy.

To start, Plaintiff has plausibly pleaded the existence of a formal, 28-day video retention policy.  It is exceedingly well-established that, on a motion to dismiss, courts must accept all well-

14

pleaded facts as true and draw all inferences in the plaintiff's favor. *Faber*, 648 F.3d at 104. Plaintiff alleges that an individual named Sofia Muñoz "confirmed to Mr. Rivera's representative that videos from his arrest were destroyed pursuant to [City] policy, stating 'the videos are erased in 28 days.'" ECF No. 20 ¶ 48. This is not a conclusory allegation, as the City alleges, ECF No. 26 at 4, but rather a plausible allegation that the City maintains a particular policy, which the City cannot challenge as factually inaccurate on a motion to dismiss.

However, Plaintiff has not pleaded that the City's video retention policy violates his constitutional rights. *See Wray*, 490 F.3d at 195 (municipal liability requires a showing that an official policy or custom caused the plaintiff to be subjected to the denial of a constitutional right); *Oliver v. City of New York*, No. 19-CV-2321 (MKV) (KHP), 2021 WL 8013766, at *6 (S.D.N.Y. Nov. 10, 2021) *report and recommendation adopted*, No. 1:19-CV-2321 (MKV), 2022 WL 633873 (S.D.N.Y. Mar. 4, 2022) ("First and foremost, Plaintiff must plead the deprivation of a constitutional right."). As in *Oliver*, Plaintiff's allegations suggest he "has a constitutional right to require preservation of surveillance video prior to assertion of any claim against the City and without even knowing whether the video contains relevant, usable footage." *Id.* But Plaintiff points to no authority supporting a finding that the City's policy implicates constitutional rights, nor does he allege which constitutional right might be implicated by the failure to preserve video footage. *Id.* And even if Plaintiff had identified a constitutional right implicated by the policy, the failure to preserve video is not itself a policy that causes a constitutional violation; rather, as Plaintiff acknowledges, the policy may make it difficult to substantiate that a constitutional violation occurred in the first place. ECF No. 20 ¶ 46 ("Video evidence is crucial to proving or

15

defending excessive force claims . . . [this policy] shield[s] officers from accountability.").[6]  In that way, the policy might be evidence that could, in theory, support a deliberate indifference claim—were one adequately pleaded—but it is not a basis for municipal liability in and of itself.

## IV.    CONCLUSION

For the reasons described herein, Defendant's motion to dismiss is GRANTED in full as to Count Three.  Plaintiff has not requested leave to amend, and thus such leave is not granted at this time.  *See Murphy Med. Assocs, LLC v. Yale Univ.*, 120 F.4th 1107, 1114 (2d Cir. 2024).  Should discovery reveal a viable theory of municipal liability, Plaintiff may move for leave to amend at that time.

**SO ORDERED** at Hartford, Connecticut, this 2nd day of July, 2026.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

---

[6] The Court recognizes that the City did not brief any argument for dismissal of the video retention policy theory besides disputing the fact that relevant videos were not preserved.  But the Court has the power to dismiss a cause of action *sua sponte* where a complaint fails to state a cognizable claim on its face.  *Shahid v. Ridgewood-Bushwick Senior Citizen Council*, 112 F. App'x 803, *1 (2d Cir. 2004) (summary order) (upholding *sua sponte* dismissal); *Bryant v. Comm'r of Soc. Sec.*, No. 14-CV-5764 (LTS) (JCF), 2015 WL 6758094, at *6 (S.D.N.Y. Nov. 5, 2015); *Chodkowski v. Cnty. of Nassau*, No. CV-16-5770 (SJF) (GRB), 2017 WL 10637956, at *13 (E.D.N.Y. Nov. 30, 2017) (citation omitted) ("The Court has the authority under Rule 12(b)(6) to dismiss a complaint *sua sponte* for 'failure to state a claim upon which relief may be granted' if the complaint lacks an arguable basis either in law or fact.").  The Court raised the issue of the viability of this theory at the oral argument, which Plaintiff's counsel failed to attend. Because it is not a cognizable theory of municipal liability, and because Plaintiff would have had the opportunity to address this issue at the argument had counsel appeared, it is appropriate to dismiss the portion of the *Monell* claim that is based on the video retention policy.